1
2
3
4
5
6
7
8           **IN THE UNITED STATES DISTRICT COURT**
9           **FOR THE EASTERN DISTRICT OF CALIFORNIA**
10

11   ESSEL MAGAT,                          No.  2:22-CV-1037-DMC

12                  Plaintiff,

13          v.                             <u>MEMORANDUM OPINION AND ORDER</u>

14   COMMISSIONER OF SOCIAL
     SECURITY,
15
                    Defendant.
16

17

18          Plaintiff, who is proceeding with retained counsel, brings this action for judicial

19   review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g).

20   Pursuant to the written consent of all parties, ECF Nos. 4 and 14, this case is before the

21   undersigned as the presiding judge for all purposes, including entry of final judgment.  See 28

22   U.S.C. § 636(c); <u>see also</u> ECF No. 15 (minute order reassigning case to Magistrate Judge).

23   Pending before the Court are the parties' briefs on the merits, ECF Nos. 11 and 12.

24          The Court reviews the Commissioner's final decision to determine whether it is:

25   (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a

26   whole.  See <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1097 (9th Cir. 1999).  "Substantial evidence" is

27   more than a mere scintilla, but less than a preponderance.  See <u>Saelee v. Chater</u>, 94 F.3d 520, 521

28   (9th Cir. 1996).  It is ". . . such evidence as a reasonable mind might accept as adequate to support

                                         1

1    a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971).  The record as a whole,

2    including both the evidence that supports and detracts from the Commissioner's conclusion, must

3    be considered and weighed.  See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones

4    v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The Court may not affirm the Commissioner's

5    decision simply by isolating a specific quantum of supporting evidence.  See Hammock v.

6    Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative

7    findings, or if there is conflicting evidence supporting a particular finding, the finding of the

8    Commissioner is conclusive.  See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

9    Therefore, where the evidence is susceptible to more than one rational interpretation, one of

10   which supports the Commissioner's decision, the decision must be affirmed, see Thomas v.

11   Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal

12   standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th

13   Cir. 1988).

14          For the reasons discussed below, the Commissioner's final decision is affirmed.

15

16                          **I.  THE DISABILITY EVALUATION PROCESS**

17          To achieve uniformity of decisions, the Commissioner employs a five-step

18   sequential evaluation process to determine whether a claimant is disabled.  See 20 C.F.R. §§

19   404.1520 (a)-(f) and 416.920(a)-(f).  The sequential evaluation proceeds as follows:

20              Step 1      Determination whether the claimant is engaged in
21                          substantial gainful activity; if so, the claimant is presumed
                            not disabled and the claim is denied;

22              Step 2      If the claimant is not engaged in substantial gainful activity,
23                          determination whether the claimant has a severe
                            impairment; if not, the claimant is presumed not disabled
24                          and the claim is denied;

25              Step 3      If the claimant has one or more severe impairments,
                            determination whether any such severe impairment meets
26                          or medically equals an impairment listed in the regulations;
                            if the claimant has such an impairment, the claimant is
27                          presumed disabled and the claim is granted;

28   / / /

                                              2

| | | |
|---|---|---|
| Step 4 | | If the claimant's impairment is not listed in the regulations, determination whether the impairment prevents the claimant from performing past work in light of the claimant's residual functional capacity; if not, the claimant is presumed not disabled and the claim is denied; |
| Step 5 | | If the impairment prevents the claimant from performing past work, determination whether, in light of the claimant's residual functional capacity, the claimant can engage in other types of substantial gainful work that exist in the national economy; if so, the claimant is not disabled and the claim is denied. |

See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f).

To qualify for benefits, the claimant must establish the inability to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted, or can be expected to last, a continuous period of not less than 12 months.  See 42 U.S.C. § 1382c(a)(3)(A).  The claimant must provide evidence of a physical or mental impairment of such severity the claimant is unable to engage in previous work and cannot, considering the claimant's age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  See Quang Van Han v. Bower, 882 F.2d 1453, 1456 (9th Cir. 1989).  The claimant has the initial burden of proving the existence of a disability.  See Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990).

The claimant establishes a prima facie case by showing that a physical or mental impairment prevents the claimant from engaging in previous work.  See Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984); 20 C.F.R. §§ 404.1520(f) and 416.920(f).  If the claimant establishes a prima facie case, the burden then shifts to the Commissioner to show the claimant can perform other work existing in the national economy.  See Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988); Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); Hammock v. Bowen, 867 F.2d 1209, 1212-1213 (9th Cir. 1989).

/ / /

/ / /

/ / /

/ / /

3

## II.  THE COMMISSIONER'S FINDINGS

Plaintiff applied for social security benefits on June 16, 2020.  See CAR 16.[1]  In the application, Plaintiff claims disability began on July 1, 2019.  See id.  Plaintiff's claim was initially denied.  Following denial of reconsideration, Plaintiff requested an administrative hearing, which was held on November 4, 2021, before Administrative Law Judge (ALJ) Vincent A. Misenti.  In a December 8, 2021, decision, the ALJ concluded Plaintiff is not disabled based on the following relevant findings:

1.    The claimant has the following severe impairment(s): post-traumatic stress disorder (PTSD); anxiety; depression; traumatic brain injury; cervical degenerative disc disease; left shoulder degenerative joint disease; and obesity;

2.    The claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations;

3.    The claimant has the following residual functional capacity: the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he can occasionally reach overhead with the left upper extremity and he can frequently reach in all other directions with the left upper extremity; the claimant is right-hand dominant; the claimant can frequently climb ramps and stairs, but he can never climb ladders or scaffolds; he can frequently balance, stoop, kneel, and crouch; the claimant can occasionally crawl; he can never work at unprotected heights; the claimant should avoid concentrated exposure to moving mechanical parts; he is limited to understanding, remembering, and carrying out simple, routine, and repetitive tasks, using judgment limited to simple work-related decisions; the claimant cannot perform at a production rate pace, meaning no assembly line work, but he can perform goal or task oriented work; the claimant is limited to interact with coworkers and the public occasionally;

4.    Considering the claimant's age, education, work experience, residual functional capacity, and vocational expert testimony, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

See id. at 19-30.

After the Appeals Council declined review on April 11, 2022, this appeal followed.

/ / /

---

[1]    Citations are to the Certified Administrative Record (CAR) lodged on September 10, 2022, ECF No. 6.

1

### III.  DISCUSSION

2      In his opening brief, Plaintiff argues: (1) the ALJ erred by failing to account for

3   Plaintiff's gout, headaches, memory deficits, non-breathing related insomnia, radiculopathy,

4   fibromyalgia, reduced range of motion, and chronic pain; (2) the Commissioner erred by failing

5   to consider at the Appeals Council level opinions from orthopedic surgeon Dr. Dang and

6   psychotherapist Khanh Vuong, LCSW; (3) the ALJ failed to articulate an adequate basis to reject

7   Plaintiff's subjective statements and testimony; (4) the ALJ failed to properly weigh the medical

8   opinion evidence; (5) the ALJ's assessment of Plaintiff's residual functional capacity is not based

9   on substantial evidence; and (6) these cumulative errors rendered the hypothetical questions

10  posed by the ALJ to the vocational expert flawed and, thus, the vocational expert's testimony

11  lacked evidentiary value.

12      Attached to Plaintiff's opening brief as Exhibit A is a March 2, 2022, letter from

13  Dr. Dang.  See ECF No. 11, pgs. 19-22.  Attached as Exhibit B is a February 25, 2022,

14  assessment by Khanh Vuong, LCSW.  See id. at 24-26.

15      **A.      Severity of Impairments**

16      Plaintiff argues the ALJ erred by failing to consider his gout, headaches, memory

17  deficits, non-breathing related insomnia, radiculopathy, fibromyalgia, reduced range of motion,

18  and chronic pain.  See ECF No. 11, pgs. 5-7.  Plaintiff asserts the ALJ's failure to consider these

19  impairments infects the entire decision throughout the sequential evaluation process.  See id.

20  Given that the ALJ's conclusion at Step 1 was favorable to Plaintiff, the Court begins its analysis

21  at Step 2.

22      At Step 2, the plaintiff must establish an impairment severe enough to significantly

23  limit the physical or mental ability to do basic work activities.  See 20 C.F.R. §§ 404.1520(c),

24  416.920(c).[2]  In determining whether a claimant's alleged impairment is sufficiently severe to

25  limit the ability to work, the Commissioner must consider the combined effect of all impairments

---

26      [2]      Basic work activities include: (1) walking, standing, sitting, lifting, pushing,
    pulling, reaching, carrying, or handling; (2) seeing, hearing, and speaking; (3) understanding,
27  carrying out, and remembering simple instructions; (4) use of judgment; (5) responding
    appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes
28  in a routine work setting.  See 20 C.F.R. §§ 404.1521, 416.921.

on the ability to function, without regard to whether each impairment alone would be sufficiently
severe.  See Smolen v. Chater, 80 F.3d 1273, 1289-90 (9th Cir. 1996); see also 42 U.S.C. §
423(d)(2)(B); 20 C.F.R. §§ 404.1523 and 416.923.  An impairment, or combination of
impairments, can only be found to be non-severe if the evidence establishes a slight abnormality
that has no more than a minimal effect on an individual's ability to work.  See Social Security
Ruling (SSR) 85-28; see also Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988) (adopting
SSR 85-28).  The plaintiff has the burden of establishing the severity of the impairment by
providing medical evidence consisting of signs, symptoms, and laboratory findings.  See 20
C.F.R. §§ 404.1508, 416.908. The plaintiff's own statement of symptoms alone is insufficient.
See id.

At Step 2, the ALJ determined that Plaintiff's severe impairments include PTSD,
anxiety, depression, traumatic brain injury, cervical degenerative disc disease, left shoulder
degenerative joint disease, and obesity.  See CAR 19.  The ALJ concluded that these "medically
determinable impairments significantly limit the ability to perform basic work activities. . . ."  Id.
The ALJ did not provide any analysis relating to gout, headaches, memory deficits, non-breathing
related insomnia, radiculopathy, fibromyalgia, reduced range of motion, or chronic pain.

Citing pages 444 and 605 of the record, Plaintiff contends that the ALJ failed to
consider Plaintiff's "non-breathing" insomnia.  See ECF No. 11, pg. 6.  Citing pages 571 through
573, and page 625, as well as hearing testimony at pages 55-56, Plaintiff argues the ALJ ignored
the impact of Plaintiff's gout.  See ECF No. 11, pg. 6.  Next, citing pages 444, 604, 710, and 722
of the record, as well as hearing testimony at page 56, Plaintiff asserts that the ALJ failed to
consider Plaintiff's headaches.  See ECF No. 11, pgs. 6-7.  Finally, Plaintiff cites his hearing
testimony at pages 50 and 53 of the record, arguing that the ALJ failed to consider Plaintiff's
memory problems.  See ECF No. 11, pg. 7.  Plaintiff does not offer any analysis or citations to the
record relating to radiculopathy, fibromyalgia, reduced range of motion, or chronic pain.  The
Court, therefore, is unable to evaluate Plaintiff's contentions regarding these impairments.

The Court does note, however, that Defendant has not responded to this portion of
Plaintiff's brief.

1         1.      <u>Non-Breathing Insomnia</u>

2         Plaintiff references pages 444 and 605 of the record regarding non-breathing

3 insomnia. <u>See</u> ECF No. 11, pg. 6.

4         Page 444 of the record is page 27 of 277 of Exhibit 2F. <u>See</u> CAR 444. Exhibit 2F

5 consists of records from the Department of Veteran's Affairs (VA). <u>See</u> <u>id.</u> at 418-694. The

6 document at page 444 references a visit on March 31, 2021. <u>See</u> <u>id.</u> at 444. The visit note

7 indicates that Plaintiff presented with complaints of headaches, dizziness, poor memory, poor

8 sleep, anxiety, depressed mood, irritability resulting from a traumatic brain injury in 1995. <u>See</u>

9 <u>id.</u> This particular page of the record, specifically cited by Plaintiff, does not appear to reference

10 non-breathing insomnia, or any type of insomnia.

11         Plaintiff also cites page 605 of the record. This document is page 188 of Exhibit

12 2F. <u>See</u> <u>id.</u> at 605. The document references Plaintiff's complaint of insomnia. <u>See</u> <u>id.</u> The

13 document does not reference any functional limitations related to this impairment. <u>See</u> <u>id.</u> As

14 such, the document does not support Plaintiff's contention that the ALJ failed to consider the

15 severity of insomnia.

16         Because Plaintiff has not presented the Court or the Commissioner of evidence of

17 an insomnia-related impairment, the lack of consideration of this issue cannot constitute error at

18 Step 2 or further in the sequential evaluation process.

19         2.      <u>Gout</u>

20         Plaintiff cites pages 571 through 573, and page 625, as well as hearing testimony

21 at pages 55-56, regarding gout. <u>See</u> ECF No. 11, pg. 6.

22         Pages 571 through 573 of the record also consist of portions of Exhibit 2F. <u>See</u>

23 CAR 571-73. This portion of the exhibit references Plaintiff's complaint of an increased

24 frequency of gout symptoms. <u>See</u> <u>id.</u> at 571. The referenced documents do not reflect any

25 functional limitations related to gout. <u>See</u> <u>id.</u> at 571-73. Page 625 of the record is page 208 of

26 Exhibit 2F. As with the above, this document references gout but does not indicate any

27 functional limitations associated with this impairment. Finally, the cited portions of the hearing

28 testimony reference gout but do not indicate functional limitation associated with this problem.

1  See CAR 55-56.

2          On this record and having carefully considered Plaintiff's arguments, the Court

3  finds that Plaintiff has not presented evidence sufficient to establish that gout symptoms present

4  more than minimal limitations on his ability to work.  The ALJ did not err at Step 2 or elsewhere

5  in the decision with respect to Plaintiff's allegation of disabling gout symptoms.

6                  3.      Headaches

7          Regarding headaches, Plaintiff notes pages 444, 604, 710, and 722 of the record,

8  as well as hearing testimony at page 56.  See ECF No. 11, pgs. 6-7.

9          Revisiting page 444 of the record, Exhibit 2F, the Court notes that Plaintiff

10  complained of headaches.  See CAR 444.  No functional assessment is presented in this

11  document.  See id.  Page 605 of the record is also a portion of Exhibit 2F.  The Court cannot find

12  in this document any reference to functional limitations associated with headaches.

13          Finally, the Court considers Plaintiff's citation to the hearing testimony at page 56

14  of the record.  The hearing transcript reflects the following exchange between the ALJ and

15  Plaintiff regarding headaches:

16          Q:      Mm-hmm.  Okay.  Now, the records mention headaches.
          Do you still experience those?
17
18          A:      Yes.

19          Q:      Okay, how often do you get them?

20          A:      I get them almost ever day, and then at least when – four or
          five times a month where sometimes I just can't do anything.  I just have a
21          headache all day.

22          Q:      Now, are these headaches different from the ones you get
          almost every day?
23
          A:      Yes.  They're more severe, and then they go over into the
24          next day.

25          Q:      And what are our symptoms when you have these kind of
          headaches?  Are you sensitive to sound?
26
          A:      Yes.  Everything it just irritates me.  The lights.  I can't,
27          you know, I can't – I have to be in a dark room.

28  / / /

8

Q:      Mm-hmm.  And what about noise?

A:      Noise already, I – I get scared when, I hear loud sounds. . . .

CAR 56.

These subjective complaints suggest a headache-related impairment.  They do not, however, constitute objective medical findings in support of such an impairment.  The Court concludes that the ALJ did not err at Step 2 or elsewhere in the sequential analysis with respect to Plaintiff's complaints of disabling headaches. Nothing in the cited material suggests that the disclosure of these complaints prompted any medical treatment or intervention, and as such, there was nothing overlooked by the ALJ regarding a diagnosed impairment.

4.      Memory Problems

Plaintiff cites his hearing testimony at pages 50 and 53 of the record regarding memory problems.  See ECF No. 11, pg. 7.

The Court does not reproduce the cited hearing transcript here.  It is sufficient to say that Plaintiff's hearing testimony does not satisfy the requirement that objective medical evidence must be produced to establish the severity of an alleged impairment.  Here, Plaintiff has not cited to such evidence and, for this reason, the Court cannot conclude that the ALJ erred at Step 2 or elsewhere in the sequential evaluation process with respect to memory problems.

**B.      Residual Functional Capacity**

Plaintiff raises several arguments challenging the ALJ's determination of his residual functional capacity.  First, Plaintiff argues that the ALJ "wrongly excluded material evidence" from Dr. Dang and therapist Khanh Vuong.  See ECF No. 11, pgs. 7-8.  Second, Plaintiff contends that the ALJ failed to properly evaluate Plaintiff's subjective statements and testimony.  See id. at 8-9.  Third, Plaintiff asserts that the ALJ failed to properly weigh the medical opinion evidence of record.  See id. at 9-13.  Finally, Plaintiff generally contends that the ALJ's residual functional capacity determination is not based on substantial evidence.  See id. at 13-14.

Residual functional capacity is what a person "can still do despite [the individual's] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a) (2003); see also Valencia v.

<u>Heckler</u>, 751 F.2d 1082, 1085 (9th Cir. 1985) (residual functional capacity reflects current "physical and mental capabilities"). Thus, residual functional capacity describes a person's exertional capabilities in light of his or her limitations.[3] An ALJ's RFC finding must include all of the limitations the ALJ has found to be supported by the evidence of record. See SSR 85-15.

In determining residual functional capacity, the ALJ must assess what the plaintiff can still do in light of both physical and mental limitations. See 20 C.F.R. §§ 404.1545(a), 416.945(a) (2003); see also <u>Valencia v. Heckler,</u> 751 F.2d 1082, 1085 (9th Cir. 1985) (residual functional capacity reflects current "physical and mental capabilities"). Where there is a colorable claim of mental impairment, the regulations require the ALJ to follow a special procedure. See 20 C.F.R. §§ 404.1520a(a), 416.920a(a). The ALJ is required to record pertinent findings and rate the degree of functional loss. See 20 C.F.R. §§ 404.1520a(b), 416.920a(b).

1.    <u>Medical Opinions</u>

Plaintiff argues that the ALJ failed to consider opinions from Dr. Dang and Mr. Vuong. Plaintiff also contends that the ALJ failed to properly evaluate the other opinion evidence of record.

"The ALJ must consider all medical opinion evidence." <u>Tommasetti v. Astrue,</u> 533 F.3d 1035, 1041 (9th Cir. 2008) (citing 20 C.F.R. § 404.1527(b)). The ALJ errs by not explicitly rejecting a medical opinion. See <u>Garrison v. Colvin</u>, 759 F.3d 995, 1012 (9th Cir. 2014). The ALJ also errs by failing to set forth sufficient reasons for crediting one medical opinion over another. See <u>id.</u>

---

[3]    Exertional capabilities are the primary strength activities of sitting, standing, walking, lifting, carrying, pushing, or pulling and are generally defined in terms of ability to perform sedentary, light, medium, heavy, or very heavy work. See 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(a). "Sedentary work" involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. See 20 C.F.R. §§ 404.1567(a) and 416.967(a). "Light work" involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. See 20 C.F.R. §§ 404.1567(b) and 416.967(b). "Medium work" involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. See 20 C.F.R. §§ 404.1567(c) and 416.967(c). "Heavy work" involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. See 20 C.F.R. §§ 404.1567(d) and 416.967(d). "Very heavy work" involves lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. See 20 C.F.R. §§ 404.1567(e) and 416.967(e).

1           Under the regulations, only "licensed physicians and certain qualified specialists"

2   are considered acceptable medical sources.  20 C.F.R. § 404.1513(a); see also Molina v. Astrue,

3   674 F.3d 1104, 1111 (9th Cir. 2012).  Where the acceptable medical source opinion is based on

4   an examination, the ". . . physician's opinion alone constitutes substantial evidence, because it

5   rests on his own independent examination of the claimant."  Tonapetyan v. Halter, 242 F.3d 1144,

6   1149 (9th Cir. 2001).  The opinions of non-examining professionals may also constitute

7   substantial evidence when the opinions are consistent with independent clinical findings or other

8   evidence in the record.  See Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002).  Social

9   workers are not considered an acceptable medical source.  See Turner v. Comm'r of Soc. Sec.

10  Admin., 613 F.3d 1217, 1223-24 (9th Cir. 2010).  Nurse practitioners and physician assistants

11  also are not acceptable medical sources.  See Dale v. Colvin, 823 F.3d 941, 943 (9th Cir. 2016).

12  Opinions from "other sources" such as nurse practitioners, physician assistants, and social

13  workers may be discounted provided the ALJ provides reasons germane to each source for doing

14  so.  See Popa v. Berryhill, 872 F.3d 901, 906 (9th Cir. 2017), but see Revels v. Berryhill, 874

15  F.3d 648, 655 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(f)(1) and describing circumstance

16  when opinions from "other sources" may be considered acceptable medical opinions).

17          The Commissioner has promulgated revised regulations concerning how ALJs

18  must evaluate medical opinions for claims filed, as here, on or after March 27, 2017.  See 20

19  C.F.R. §§ 404.1520c, 416.920c.  These regulations supersede prior caselaw establishing the

20  treating physician rule which established a hierarchy of weight to be given medical opinions

21  depending on their source.  See id.; see also Jones v. Saul, 2021 WL 620475, at *9 (E.D. Cal.

22  Feb. 17, 2021) ("In sum, because (1) the 2017 regulations are not arbitrary and capricious or

23  manifestly contrary to statute, (2) the prior judicial construction was not mandated by the

24  governing statutory language to the exclusion of a differing agency interpretation, and (3) the

25  [treating-physician rule] is inconsistent with the new regulation, the court concludes that the 2017

26  regulations effectively displace or override [prior caselaw.]").  Thus, ALJs are no longer required

27  to "defer to or give any specific evidentiary weight to" treating physicians over medical opinions

28  from other sources.  See Carr v. Comm'r of Soc. Sec., 2021 WL 1721692, at *7 (E.D. Cal. Apr.

1   30, 2021).

2           Under the revised regulations, the ALJ must evaluate opinions and prior

3   administrative medical findings by considering their "persuasiveness."  See Buethe v. Comm'r of

4   Soc. Sec., 2021 WL 1966202, at *3 (E.D. Cal, May 17, 2021) (citing 20 C.F.R. § 404.1520c(a)).

5   In determining how persuasive the opinion of a medical source is, an ALJ must consider the

6   following factors:  supportability, consistency, treatment relationship, specialization, and "other

7   factors."  See Buethe, 2021 WL 1966202, at *3 (citing § 404.1520c(b), (c)(1)-(5)).  Despite a

8   requirement to consider all factors, the ALJ's duty to articulate a rationale for each factor varies.

9   See Buethe, 2021 WL 1966202, at *3 (citing § 404.1520c(a)-(b)).

10          Specifically, in all cases the ALJ must at least "explain how [she] considered the

11  supportability and consistency factors," as they are "the most important factors." See Buethe,

12  2021 WL 1966202, at *4 (citing § 404.1520c(b)(2)).  For supportability, the regulations state:

13  "[t]he more relevant the objective medical evidence and supporting explanations presented by a

14  medical source are to support his or her medical opinion(s) or prior administrative medical

15  finding(s), the more persuasive [the opinion] will be."  See Buethe, 2021 WL 1966202, at *4

16  (quoting § 404.1520c(c)(1)).  "For consistency, the regulations state: '[t]he more consistent a

17  medical opinion(s) or prior administrative medical finding(s) is with the evidence from other

18  medical sources and nonmedical sources in the claim, the more persuasive [the opinion] will be.'"

19  Buethe, 2021 WL 1966202, at *4 (quoting § 404.1520c(c)(2)).  "The ALJ is required to articulate

20  findings on the remaining factors (relationship with claimant, specialization, and 'other') only

21  when 'two or more medical opinions or prior administrative medical findings about the same

22  issue' are 'not exactly the same,' and both are 'equally well-supported [and] consistent with the

23  record.'"  Buethe, 2021 WL 1966202, at *4 (quoting § 404.1520c(b)(2) & (3)).

24          At Step 4, the ALJ evaluated the various medical opinions of record.  See CAR 25-

25  27.  Specifically, the ALJ considered opinions from the following sources: (1) agency medical

26  consultant Y. Ruo, M.D.; (2) agency medical consultant M. Mazuryk, M.D.; (3) agency

27  psychological consultant M. Heid, M.D.; (4) Plaintiff's psychotherapist Elizabeth Fleming,

28  LMFT; and (5) Plaintiff's physical therapist.  See id.  The ALJ did not discuss the documents

                                                    12

1  from Dr. Dang or Mr. Vuong attached to Plaintiff's brief as Exhibit A and Exhibit B.

2  Plaintiff's various arguments relating to the medical opinion evidence – both of

3  record and newly obtained after the hearing – challenge the Commissioner's consideration of the

4  opinions of Dr. Dang, Mr. Vuong, Ms. Fleming, and the agency non-examining internal medicine

5  consultants.

6  i.  Dr. Dang and Mr. Vuong

7  Plaintiff provides with his opening brief at Exhibits A and B reports prepared in

8  early 2022 by Dr. Dang and Mr. Vuong.  See ECF No. 11, pgs. 18-26.  These were not considered

9  by the ALJ as both the administrative hearing and ALJ's decision pre-date these documents.  The

10  Appeals Council, however, considered these documents in declining review of the ALJ's

11  decision.  See CAR 1-7.  The Appeals Council stated:

12  You submitted a statement from Khanh Vuong, L.C.S.W., dated February
   25, 2022 (3 pages); and a statement from Alan B.C. Dang, M.D., dated
13  March 2, 2022 (4 pages). We find this evidence does not show a
   reasonable probability that it would change the outcome of the decision.
14  We did not exhibit this evidence.

15  CAR 2.

16  Citing Garrison, 759 F.3d at 1012 – a case decided prior to the revised regulations

17  applicable here – Plaintiff contends that the Commissioner "must 'always give good reasons for

18  the weight ascribed to treating-source opinions and non-treating examiners."  ECF No. 11, pg. 8.

19  Plaintiff adds that simply stating that the reports from Dr. Dang and Mr. Vuong would not change

20  the ALJ's decision is not a good reason, "especially given that they set forth limitations what

21  would severely erode Mr. M's vocational adaptability (e.g., monthly absences; working at a

22  lowed pace) ad their opinions are consistent with the record."  Id.

23  Defendant argues that these records could have been available at the time of the

24  hearing or within the period of time post-hearing the ALJ held the record open for submission of

25  additional evidence and that Plaintiff erred – not the Commissioner – by failing to present this

26  evidence in a timely manner.  See ECF No. 12, pgs. 19-20.  The Court agrees.  As to Dr. Dang,

27  his March 2, 2022, letter indicates that he last treated Plaintiff on July 19, 2021.  As this date was

28  before the administrative hearing held on November 4, 2021, Dr. Dang's report could have and

should have been produced earlier, and Plaintiff offers no explanation for his failure to do so. Similarly, Mr. Vuong states in his February 25, 2022, report that he has treated Plaintiff "bi-weekly to weekly" since May 2020.  Thus, Plaintiff could have and should have requested Mr. Vuong to complete his assessment in advance of the November 2021 administrative hearing, and Plaintiff does not explain why he failed to do so.

Additionally, Dr. Dang's assessment, to the extent he even offers any functional opinions, is not relevant.  In his four-page March 2, 2022, report. Dr. Dang recites his history of treatment of Plaintiff for cervical spine degenerative changes, starting on August 12, 2019.  See id. at 19.  Dr. Dang specifically notes that he has not treated or seen Plaintiff since July 19, 2021. See id. at 20.  Dr. Dang opined that, "[g]iven that common electrical work benefits from good neck motion," Plaintiff's limited neck mobility "may impact his ability to work full-time in a competitive job market."  Id. at 21 (emphasis added).  Dr. Dang added: "More likely than not, there will be some electrical outlets or electrical work that he would have difficulty working with."  Id.  The doctor also stated that, for some unspecified activities, Plaintiff "may be able to adapt and find a safe, ergonomic position that would still be slower than a standard approach." Id. (emphasis added).  Dr. Dang does not define the phrase "standard approach."  Nor does Dr. Dang quantify how much "slower" an adaptive approach would be.  Dr. Dang, however, acknowledges that Plaintiff could be able to perform other jobs, such as preparing estimates or ordering supplies from a computer.  See id.

The doctor's statements as to work-related limitations appear to all assume Plaintiff would be returning to his past-relevant work as an electrician.  As the Appeals Council noted, Dr. Dang's opinions regarding past-relevant work are irrelevant and would not have changed the ALJ's decision because the ALJ concluded that Plaintiff cannot perform any of his past relevant work.  In essence, as related to Plaintiff's ability to perform his past-relevant work, the Commissioner has adopted Dr. Dang's assessment.

/ / /

/ / /

/ / /

14

1

                ii.      Therapist Fleming

2

      As to opinions provided by Ms. Fleming, Plaintiff's psychotherapist, the ALJ

3

stated:

4
5
6
7
8
9
10
11
12
13
14
15
16

> On November 2, 2021, the claimant's psychotherapist, Elizabeth Fleming, LMFT, opined that the claimant would have difficulty completing a normal workday and workweek. The claimant would need to have hourly ten-to-fifteen minutes breaks. The claimant had deficits in stress tolerance and interpersonal functioning (Exhibit 9F). While the undersigned agrees that the claimant has mental limitations, this opinion is out-of-proportion to the overall evidence of record. Although Ms. Fleming provided a detailed letter, the opinion is not supported by explanation based upon contemporaneous treatment notes as there are no treatment notes in the claimant's file. Moreover, the opinion is not consistent with the overall evidence of record, which documents the claimant's mental status examination findings of a dysphoric mood, speech within normal limits, normal thought content, engaging, appropriate thought process, no cognitive impairments, and appropriate eye contact (Exhibit 2F/17, 23, 31, 75, 95, 145; 6F/2, 10; 7F/6; 8F/2, 16). Furthermore, Ms. Fleming's assertion that the claimant experienced shaking is not consistent with the overall evidence of record, which documents that the claimant had no psychomotor agitation, retardation, repetitive movement, tremors, or tics (Exhibits 2F/111, 187; 9F/2). The claimant reported no side effects or some sleepiness, but there were no complaints of shakiness or tremors (Exhibits 2F/16; 6F/10, 44). In addition, the claimant's physical examination findings noted that his Romberg was negative, and his gait was generally normal without an assistive device (Exhibit 1F/55, 59, 91; 2F/6; 6F/8, 25; 8F/21, 59). As such, the undersigned does not find this opinion persuasive.

17

      CAR 26-27.

18

      The Court finds that the ALJ provided a sufficient explanation for rejecting Ms.

19

Fleming's assessment.  Specifically, as the ALJ and Defendant note, Ms. Fleming's report is not

20

accompanied by any treatment notes reflecting contemporaneous objective findings.  In fact, the

21

record contains <u>no</u> treatment notes from Ms. Fleming.

22

                iii.      Agency Internal Medicine Consultants

23

      The ALJ stated as follows with respect to the opinions offered by the agency

24

medical consultants:

25
26
27
28

> The State agency medical consultant, Y. Ruo, M.D., opined on July 30, 2020, that the claimant could lift and carry 25 pounds occasionally and frequently. He could stand and/or walk for about six hours in an eight-hour workday. The claimant could sit for about six hours in an eight-hour workday. He could occasionally climb ladders, ropes, or scaffolds. The claimant could occasionally reach overhead with the left upper extremity (Exhibit 4A/7). This prior administrative finding is supported by

explanation based upon the review of the available medical evidence of record. The prior administrative finding is not consistent with the overall evidence of record such as the claimant's cervical spine imaging and left shoulder imaging that documents degenerative changes (Exhibits 2F/7; 7F/82). As such, the undersigned does not find this opinion persuasive.

Upon reconsideration on May 18, 2021, the State agency medical consultant, M. Mazuryk, M.D., opined that the claimant could lift and carry 20 pounds occasionally and 10 pounds frequently. The claimant could stand and/or walk for about six hours in an eight-hour workday. He could sit for about six hours in an eight-hour workday. The claimant could occasionally push and/or pull bilaterally. He could occasionally crawl, crouch, kneel, stoop, balance, and climb ramps and stairs, but he could never climb ladders, ropes, or scaffolds. The claimant could occasionally reach overhead bilaterally. He should avoid concentrated exposure to extreme cold and vibrations. The claimant should avoid even moderate exposure to hazards such as uneven terrain and unprotected heights (Exhibit 2A/9). This prior administrative finding was supported by explanation based upon the review of the available medical evidence of record. The prior administrative finding is partially consistent with the overall evidence of record. For example, the limitation on bilateral overhead reaching is not consistent with the fact that the claimant's symptoms were primarily with the left upper extremity. Furthermore, while the light exertion is consistent with the claimant cervical spine degenerative disc disease status post-fusion surgery, the limitation to occasional postural activities is not consistent with the improvement of the claimant's cervical spine after the surgery (Exhibit 2F/7). Thus, the undersigned finds the limitation to light exertion, limitation of no ladders or scaffolds, occasional crawling, and limitation on unprotected heights persuasive, but the remainder of the prior administrative finding the undersigned finds unpersuasive.

CAR 25-26.

According to Plaintiff:

. . .The ALJ rejected Non-Examining Medical Consultant Dr. R. Mazuryk's findings that Mr. M was limited to occasional bilateral overhead reaching and occasional postural activities because, per the ALJ, Mr. M's symptoms were "primarily with the left upper extremity" and his cervical spine improved after surgery.  (AR 26).  This is simply not the case.  (See e.g. AR 443; Ex. B).

ECF No. 11, pg. 13.

Page 443 of the record, cited by Plaintiff, is page 26 of 277 of Exhibit 2F.  See CAR 443.  The document is an except from notes of a March 31, 2021, medical visit.  See id. While the document reflects Plaintiff's complaints of pain following surgery, it does not reflect any objective findings which contradict the ALJ's conclusion.  Similarly, Exhibit B is Mr. Vuong's February 25, 2022, assessment provided with Plaintiff's brief and does not contain a

16

1    physical capacity assessment which contradicts the ALJ's analysis of Dr. Mazuryk's opinions as

2    to Plaintiff's physical capacity.  The Court finds no error in the ALJ's analysis of Dr. Mazuryk's

3    opinions, which were largely adopted.

4                          2.      Plaintiff's Subjective Statements and Testimony

5                   According to Plaintiff, the ALJ failed to adequately articulate a sufficient basis for

6    rejecting Plaintiff's subjective statements and testimony.

7                   The Commissioner determines the weight to be given to a claimant's own

8    statements and testimony, and the court defers to the Commissioner's discretion if the

9    Commissioner used the proper process and provided proper reasons.  See Saelee v. Chater, 94

10   F.3d 520, 522 (9th Cir. 1996).  An explicit finding must be supported by specific, cogent reasons.

11   See Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990).  General findings are insufficient.

12   See Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995).  Rather, the Commissioner must identify

13   what testimony is not afforded weight and what evidence undermines the testimony.  See id.

14   Moreover, unless there is affirmative evidence in the record of malingering, the Commissioner's

15   reasons for rejecting testimony as not credible must be "clear and convincing."  See id.; see also

16   Carmickle v. Commissioner, 533 F.3d 1155, 1160 (9th Cir. 2008) (citing Lingenfelter v Astrue,

17   504 F.3d 1028, 1936 (9th Cir. 2007), and Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)).

18                   If there is objective medical evidence of an underlying impairment, the

19   Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely

20   because they are unsupported by objective medical evidence.  See Bunnell v. Sullivan, 947 F.2d

21   341, 347-48 (9th Cir. 1991) (en banc).  As the Ninth Circuit explained in Smolen v. Chater:

22                    The claimant need not produce objective medical evidence of the
                      [symptom] itself, or the severity thereof.  Nor must the claimant produce
23                    objective medical evidence of the causal relationship between the
                      medically determinable impairment and the symptom.  By requiring that
24                    the medical impairment "could reasonably be expected to produce" pain or
                      another symptom, the Cotton test requires only that the causal relationship
25                    be a reasonable inference, not a medically proven phenomenon.

26                    80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in
                      Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)).
27

28   / / /

                                                17

The Commissioner may, however, consider the nature of the symptoms alleged, including aggravating factors, medication, treatment, and functional restrictions.  See Bunnell, 947 F.2d at 345-47.  In weighing a claimant's statements and testimony, the Commissioner may also consider: (1) the claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5) physician and third-party testimony about the nature, severity, and effect of symptoms.  See Smolen, 80 F.3d at 1284 (citations omitted).  It is also appropriate to consider whether the claimant cooperated during physical examinations or provided conflicting statements concerning drug and/or alcohol use.  See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002).  If the claimant testifies as to symptoms greater than would normally be produced by a given impairment, the ALJ may disbelieve that testimony provided specific findings are made.  See Carmickle, 533 F.3d at 1161 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

At Step 4, the ALJ evaluated Plaintiff's subjective statements and testimony.  See CAR 22-25.  The ALJ summarized Plaintiff's statements and testimony as follows:

> The claimant initially alleged disability because of posttraumatic stress disorder, chronic migraine headaches, degenerative disc disease, spinal stenosis, upper extremity radiculopathy, cervical strain and neck radiculopathy, impaired memory, impaired focus and concentration, and painful scars (Exhibit 2E/2). At the hearing, the claimant testified that he was unable to work because of constant pain in his left shoulder, posttraumatic stress disorder, and traumatic brain injury. He testified that he could not carry more than a gallon of milk. The claimant testified that he had pain with overhead reaching and problems reaching in front with his left arm. He testified that he was right-handed. The claimant testified that he had dizziness and that he had a fall in December 2018 such that his symptoms became worse. The claimant did not testify to any neck pain.
>
> The claimant testified further that he was assaulted in 1995, which caused him fear. He testified that without medication he had anger issues that might cause him trouble. The claimant testified that he took his medication, which helped calm him down, but caused him to shake all the time.
>
> CAR 22-23.

/ / /

/ / /

18

1    The ALJ determined Plaintiff's allegations are "not entirely consistent with the
2    medical evidence and other evidence in the record. . . ." CAR 23.  The ALJ stated:

3    > The claimant's allegations of disability are not consistent with the
     > claimant's medical evidence of record that documents that the claimant
4    > worked for over two and half decades at a high paying technical job
     > following head injury and the evidence of anger outburst was only
5    > sporadic. Moreover, the claimant's mental status examination findings
     > were generally within normal limits. The claimant's allegations of
6    > disability are not consistent with improvement of cervical pain with
     > surgery and minimal medical treatment of left shoulder.
7
     > CAR 23.
8

9    The ALJ then discussed each of Plaintiff's subjective complaints in turn in the
10   context of the objective medical evidence.  See CAR 23-25.

11   The lengthiest discussion concerns Plaintiff's allegations of limitations associated
12   with cervical degenerative disc disease and left shoulder degenerative joint disease.  See id. at 23-
13   24.  The ALJ noted that Plaintiff complained of neck pain with headaches and left upper
14   extremity pain which worsened after a fall in December 2018.  See id. at 23.  The ALJ observed
15   that physical examination revealed tenderness to palpation with painful range of motion.  See id.
16   Plaintiff's physical examination also showed decreased sensation to light touch over the left
17   thumb, but otherwise sensation was intact, strength was normal, and gait was normal.  See id.
18   The ALJ next discussed the various scans and imaging studies of Plaintiff's cervical spine and left
19   shoulder in December 2018, June 2019, and August 2019.  See id.  The ALJ stated that Plaintiff
20   complained primarily of left upper extremity pain during 2020 and physical therapy treatment
21   notes indicated that Plaintiff's neck and left shoulder range of motion were limited by pain.  See
22   id. at 23-24.  Plaintiff reported improvement with physical therapy and acupuncture, and further
23   improvement following a cervical fusion in August 2020.  See id. at 24.

24   As part of the ALJ's discussion of Plaintiff's cervical degenerative disc disease
25   and left shoulder degenerative joint disease, the ALJ noted that Plaintiff is obese.  See id.  The
26   ALJ also noted that, although Plaintiff was provided a cane in May 2021, treatment notes showed
27   that Plaintiff generally had a normal gait without an assistive device.  See id.
28   / / /

1    Next, the ALJ addressed Plaintiff's complaints related to a traumatic brain injury

2    resulting from an assault in 1995.  See id. at 24-25.  In particular, the ALJ observed that imaging

3    studies from May 2017 showed that Plaintiff's brain was normal.  See id.  As to Plaintiff's

4    complaints of poor sleep, headaches, poor memory, anxiety, depressed mood, and irritability, the

5    ALJ noted that mental status examination findings revealed normal speech, logical thought

6    process, intact judgment and insight, and that Plaintiff was alert and oriented.  See id. at 25.

7    Additionally, despite sporadic compliance with mental health treatment, Plaintiff's mental status

8    examination findings were generally within normal limits.  See id.  During 2020, Plaintiff's

9    mental status examination findings indicated that Plaintiff was well groomed, cooperative,

10   engaging, made appropriate eye contact, had normal thought content, appropriate thought process,

11   and no cognitive impairments.  See id.  Plaintiff reported improvement of his mood with

12   medication despite life stressors such as the death of a family member.  See id.  Finally, the ALJ

13   noted that during 2021, Plaintiff acknowledged improvement in his mood with therapy and

14   medication.  See id.  Mental status examinations during this time showed largely normal findings.

15   See id.

16   Citing the hearing decision at page 21 of the record, Plaintiff contends that the ALJ

17   improperly relied on his activities of daily living to discount his subjective statements and

18   testimony.  See ECF No. 11, pgs. 8-9.  This portion of the hearing decision, however, contains the

19   ALJ's discussion of the findings at Step 3 regarding the applicability of the Listing of

20   Impairments.  See CAR 19-21.  Contrary to Plaintiff's assertion, the ALJ did not cite Plaintiff's

21   daily activities in the context of the analysis at Step 4 of Plaintiff's subjective statements and

22   testimony.

23   Plaintiff also argues that the ALJ's reference to improvement following surgery is

24   improper because "[t]he ALJ must do more than make an unsubstantiated law determination

25   (which itself is improper) – he must explain how improvement of cervical pain and taking

26   minimal medication established that Mr. M can perform work as described in the ALJ's RFC."

27   ECF No. 11, pg. 9.  Plaintiff cites no authority in support of this contention.  In any event, the

28   ALJ in fact cited to much more than just improvement following surgery and improvement with

1    medication.  As outlined above, the ALJ cited numerous objective findings on physical and

2    mental status examination which support the ALJ's analysis.

3            The Court finds no error with respect to the ALJ's analysis of Plaintiff's subjective

4    statements and testimony at Step 4.

5            3.    Substantial Evidence

6            Without any citation to the record, Plaintiff very generally argues:

7                    In the instant case, the Commissioner committed reversible errors
             by failing to provide a "clear, persuasive, orderly rationale" for rejecting
8            the opinions of orthopedic surgeon Dr. Kang [apparently referring to Dr.
             Dang] and Therapist Vuong, both of which should have been considered
9            when formulating/affirming the RFC determination.  Additionally, the
             ALJ's RFC finding does not capture Mr. M's deficiency in stress
10           tolerance, adequate and consistent pace, attention, memory and other
             mental limitations.  The ALJ found Mr. M's obesity to be severe at step
11           two but failed to discuss the evidence or its actual effect on Mr. M's RFC.
             These errors were harmful, as they directly informed the ALJ's RFC and
12           the hypothetical posed to the VE."

13           ECF No. 11, pg. 14.

14           Plaintiff's argument, which is general, non-specific, and unclear, suggests that the

15   ALJ's residual functional capacity assessment is flawed because the ALJ failed to properly

16   consider opinion evidence.  As discussed above, the Court finds no error at Step 4 with respect to

17   the opinion evidence, including the opinions of Dr. Dang and therapist Vuong which post-date the

18   hearing decision.  Moreover, the record reflects that the ALJ relied on evidence of record,

19   weighed that evidence consistent with the appropriate revised standards, and rendered a decision

20   based on that evidence.  For this additional reason, the Court finds Plaintiff's argument regarding

21   the sufficiency of the evidence supporting the ALJ's decision to be unpersuasive.  The ALJ did

22   not err at Step 4.

23       **C.    Hypothetical Questions**

24           According to Plaintiff, the various errors alleged above had the cumulative effect

25   of rendering the ALJ's vocational findings at Step 5 flawed because the hypothetical posed to the

26   vocational expert did not accurately describe Plaintiff's residual functional capacity.  See ECF

27   No. 11, pgs. 14-16.

28   / / /

21

1          The Medical-Vocational Guidelines (Grids) provide a uniform conclusion about

2   disability for various combinations of age, education, previous work experience, and residual

3   functional capacity.  The Grids allow the Commissioner to streamline the administrative process

4   and encourage uniform treatment of claims based on the number of jobs in the national economy

5   for any given category of residual functioning capacity.  See Heckler v. Campbell, 461 U.S. 458,

6   460-62 (1983) (discussing creation and purpose of the Grids).  In cases where the Grids are not

7   fully applicable, the ALJ may meet his burden under step five of the sequential analysis by

8   propounding to a vocational expert hypothetical questions based on medical assumptions,

9   supported by substantial evidence, that reflect all the plaintiff's limitations.  See Roberts v.

10  Shalala, 66 F.3d 179, 184 (9th Cir. 1995).  Hypothetical questions posed to a vocational expert

11  must set out all the substantial, supported limitations and restrictions of the particular claimant.

12  See Magallanes v. Bowen, 881 F.2d 747, 756 (9th Cir. 1989).  If a hypothetical does not reflect

13  all the claimant's limitations, the expert's testimony as to jobs in the national economy the

14  claimant can perform has no evidentiary value.  See DeLorme v. Sullivan, 924 F.2d 841, 850 (9th

15  Cir. 1991).

16         Plaintiff's argument, which is entirely based on the notion of cumulative error, is

17  unpersuasive.  Because the Court has found no errors in the ALJ's analysis through the

18  determination of Plaintiff's residual functional capacity at Step 4, the Court cannot find error in

19  the ALJ's analysis at Step 5 which was based on an accurate hypothetical.

20  / / /

21  / / /

22  / / /

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

# IV.  CONCLUSION

Based on the foregoing, the Court concludes that the Commissioner's final decision is based on substantial evidence and proper legal analysis.  Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment, ECF No. 11, is denied;

2. Defendant's motion for summary judgment, ECF No. 12, is granted;

3. The Commissioner's final decision is affirmed; and

4. The Clerk of the Court is directed to enter judgment and close this file.

Dated:  September 12, 2023

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE